MEYERS STORES, INC., v. WURZBURG BROTHERS.

Opinion delivered December 2, 1929.

*Smith & Blackford,* for appellant.

*Cooley & Adams,* for appellee.

SMITH, J. Appellant, a corporation engaged in the business of selling shoe polish to jobbers, committed a breach of a contract to purchase a large quantity of bottles from appellees, and a controversy arose as to the amount of damage it should pay on that account.

Appellees brought this suit to recover the damages, and in support of their claim Reginald Wurzburg, a member of their firm, testified that a settlement was effected whereby appellant agreed to pay the sum of $177.96 on account of the bottles on hand, and the additional sum of $161.83 for freight on the shipment from the factory where the bottles had been made.

The correspondence between the parties which appears in the record was ineffectual in settling the controversy, and a telephone conversation occurred in regard to a settlement, and the member of the appellee firm above mentioned testified that appellant agreed, in this conversation, to pay both items. Appellant denied this, and testified that it was agreed that the entire controversy might be settled by paying the sum of $177.96. After the telephone conversation, appellant remitted to appellees a check for $177.96, and attached to the check as a part thereof was an invoice showing items aggregating the amount of the check, and accompanying the check was the following letter:

"We are inclosing check for $177.96 as per our conversation over the telephone. I agreed to pay 36c per gross, or stand a loss of 36c per gross on all bottles that you had on hand and those that you claim were made up at the factory, which we did. There was nothing said about freight. Consequently we are not going to stand any loss whatever on these freight items."

Immediately upon receipt of the letter, appellees wrote a reply, which was registered, in which it was stated that the check was not sufficient, and would not be accepted in full settlement of the demand, as it did not cover the item of freight, which appellant had agreed in the telephone conversation to pay as a part of the settlement. The letter further advised that the check had been deposited for collection, and that appellees would sue for the balance unless it was remitted promptly.

The cause was submitted to the jury under instructions which are not abstracted, and it will therefore be conclusively presumed that the instructions contained correct declarations of the law; but it is earnestly insisted that an accord and satisfaction was shown by the undisputed testimony on the payment of $177.96, and that a verdict should have been directed in appellant's favor, whereas the verdict of the jury was against it. The correctness of this contention is the only question presented by this appeal, which has been duly prosecuted to reverse the verdict and judgment of the court below.

It may be first said that these two items do not arise out of separate transactions, but are both elements of damage arising out of the breach of the contract to purchase the bottles. The items may have been equally meritorious, and both may have been valid as elements of damage which might have been recovered; but the question here presented is whether there has been an accord and satisfaction whereby both were settled.

It is apparent from what we have said that there was a controversy, not only as to the merit of appellees' claim, but also as to the telephone conversation concerning it, and the writer begins the letter copied above by stating his understanding of the telephone conversation in which the settlement was arrived at, and concludes the letter with the statement that appellant will not pay the freight item, and does not understand that it is expected to do so. The letter appears to us to be an unambiguous tender of $177.96 in full settlement of the controversy,

with the condition plainly and necessarily implied that, if accepted, the controversy would be thereby settled.

Counsel for appellees cite a number of our cases which discuss the essentials of a valid accord and satisfaction, but we do not review them, as the law on the subject is well settled. The difficulty is in the application of these settled principles to the facts of particular cases. The case chiefly relied upon by appellees to sustain the action of the court in submitting the question to the jury is that of *Knight* v. *Wolpert,* 172 Ark. 937, 290 S. W. 933. There the parties dealt with each other face-to-face, and, while the opinion reflects the facts that the debtor tendered the sum paid in full settlement of the controversy, it also reflects the fact that the creditor declined to receive it as such at the time the money was paid him. The debtor in that case had therefore the opportunity and the option to refuse to make the payment only after the acceptance of the condition which he sought to impose, yet he paid the money, knowing at the time that the creditor did not accede to his condition. The jury was warranted in that case in finding—as it did find—that there had been no accord and satisfaction; but, although we held that the facts of that case presented a question for the jury as to whether there had been an accord and satisfaction, we quoted with approval from the chapter on ''Accord and Satisfaction,'' 1 R. C. L., page 194, the following statement of the law: ''To constitute an accord and satisfaction in law, dependent upon the offer of the payment of money, it is necessary that the offer of money be made in full satisfaction of the demand or claim of the creditor, and be accompanied by such acts or declarations as amount to a condition that, if the money is accepted, it is to be in full satisfaction, and be of such a character that the creditor is bound to so understand the offer.''

Here the letter was written by appellant at Walnut Ridge to appellees in Memphis, and we think its tenor was such that appellees must have known that the tender of payment was made on condition that it be accepted in

full satisfaction of the controversy, and, when appellees indorsed and deposited the check in their bank at Memphis for collection for their account, their acceptance of the condition will be conclusively presumed.

The verdict should therefore have been directed in appellant's favor, and for this error the judgment must be reversed, and, as the case appears to have been fully developed, it will be dismissed.