POFF *v.* KAUFMAN.

5-634                                    276 S. W. 2d 432

Opinion delivered March 21, 1955.

*L. A. Hardin* and *Smith & Smith,* for appellant.

*Howard Cockrill,* for appellee.

ROBINSON, J.  The issue here is whether a letter constitutes the holographic will of Leo L. Kaufman who died

in May, 1954, a few years following his wife's death. They are survived by no children. The appellants, Mrs. Mattie L. Gremore and Mrs. Reba Poff, are sisters of Mrs. Kaufman. The letter in question was written by Mr. Kaufman to Mrs. Gremore on June 16, 1950, approximately four years before Mr. Kaufman's death, and is as follows:

"Recd your letter and was glad to here from you. Well I am doing OK eating OK and feel OK. Am taking some vitamin capsules larger than jelly beans have to swallow them lengthwise they are the same as I always took only they have added eleven minerals. Reba & Albert & Margaret Leo were here and went to Joes graduation. My Gladiolas are blooming and the Hydrangeas are better and larger than ever before 17 great big blooms, sure are pretty a lavender color. The cape jasmine is full of buds and or blooming. The vinegar must have helped. Well Lou I won't have but a little better than 2 years at the school, then the age limit will get me, they are letting Rex the painter out this July 1—50 over 65 years so after my time is up it will be pretty hard to get another job. So I want to salt away all I possibly can without depriving myself of anything. You know I have to look out for myself for I have no one to fall back on and by stashing all I can now maybe I can go into something for myself. Now as for you comeing here I certainly would like for you to come but on my salary I won't be able to pay you anything which I would like to do but can't see my way clear. But if you want to come you are more than welcome. I don't want you to think hard of me but if you give my position a study I think you will agree with me. I told Reba that I thought I would just continue on by myself and I could bank around $90.00 to $100.00 a month after all my debts are paid. That would put me in a position to do something for myself when this job runs out so again I ask you not to feel hard towards me by expressing myself so plainly. Now Lou if you want to come just come ahead and I will leave the latchstring hanging on the outside. After all is said and done I intend to leave you

& Reba what I have someday. Well it is 1230 PM have to make to the hay. So bye bye.''

The probate court made a finding that the letter did not constitute the holographic will of Kaufman.

Appellants maintain that the sentence ''After all is said and done I intend to leave you and Reba what I have some day'' is testamentary in character and constitutes the holographic will of Kaufman. In support of their contention appellants introduced some evidence going to show that Mr. Kaufman had been on close and friendly terms with his wife's people, whereas he had not seen much of his own blood relations and had not been in contact with them to any appreciable extent for a period of several years prior to his death. However, there is no showing of any ill feeling. One witness testified that on one occasion Mr. Kaufman made the statement, ''Well, I just wanted to tell you and I have got a bunch of kinfolks that are just like a bunch of vultures that is waiting for me to die,'' and he said ''and I am very unhappy about the whole thing''; he said ''there was going to be a bunch of them fooled.'' There is no explanation as to whom Mr. Kaufman was referring when he said he had a bunch of kinfolks; in fact, he could have been referring to his in-laws through his former wife as well as to his own blood kin. There is no showing that he made any distinction between relatives by blood and those by marriage.

Also appellant, Mrs. Poff, testified that she talked to Mr. Kaufman a short time before his death at which time, in referring to Mrs. Gremore, he said: ''You know how it is; she might want to sell it and I want you to promise me that you won't let her sell her equity in this property and you will both always have a home here.''

Mr. Kaufman died more than four years after he wrote the letter which appellants seek to establish as his holographic will, and there is no evidence that during that time he ever referred to it. There is no showing that he even remembered writing the letter or that he

had any idea that Mrs. Gremore had preserved it. The letter does not express a present purpose to devise or bequeath. It is merely an expression of an intent to do something in the future.

*Johnson* v. *White,* 172 Ark. 922, 290 S. W. 932, is controlling. There the court said: "The language in the present case does not pretend to declare a present bequest of the writer's war risk insurance policy, but is merely a message to the effect that the writer intends at a future date to change the beneficiary in his policy from appellee, his sister, to appellant, his wife, because it was his will and wish for her to have it. He did not attempt to give it to her in the letter or to use the letter as a means of bequeathing it to her."

In *Sibley* v. *Patrick,* 180 Ark. 131, 21 S. W. 2d 170, it was held that the evidence was not sufficient to establish a letter as a holographic will, and the evidence in that case is much stronger in support of the document as a will than is the evidence in the case at bar.

Appellants rely on *Arendt* v. *Arendt,* 80 Ark. 204, 96 S. W. 982. There the letter was written by Arendt on February 2 and he committed suicide on February 7. In that case the language relied on to establish the document as a will is much stronger than the language in the case under consideration. There Arendt wrote to his wife as follows: "You will find everything all right, I hope. Whatever I have in wordly goods, it is my wish that you should possess them. I have hoped against hope that everything would come out all right, but I see it is useless. Please mail those letters that I handed you, is all I ask of you. So good-bye, sweetheart." This letter was written in anticipation of immediate death.

Also appellant relies on *Cartwright* v. *Cartwright,* 158 Ark. 278, 250 S. W. 11. There a letter written by Luster Cartwright to his wife in contemplation of going into battle and realizing the possibility of being killed, was accepted as his holographic will; but there Cartwright wrote in detail of their financial affairs and made it clear he wanted his wife to get the proceeds of a

$5,000 policy of insurance. Cartwright was killed a short time thereafter, but here the situation is entirely different. Kaufman was writing a sister of his deceased wife a friendly letter, and only incidentally mentioned a thought he had of doing something in the future. It is not at all uncommon for a person to say he intends to do something and never give it another thought. Such a casual sentence as the one contained in the letter written four years before his death and never referred to again, cannot stand up as a person's last will and testament.

Affirmed.