Orville M. ODOM, Administrator of the Estate of Edd Lee Lovejoy, Deceased, Plaintiff,

v.

TRAVELERS INSURANCE CO., Defendant, Georgianna Dedow, Defendant in Interpleader.

No. 679.

United States District Court
W. D. Arkansas,
Texarkana Division.

June 16, 1959.

Wright, Harrison, Lindsey & Upton, Little Rock, Ark., for Insurance Co.

Bodenheimer, Looney & Richie, Parker & Lee, Shreveport, La., Robert M. Lowe, Texarkana, Ark., for interpleader.

JOHN E. MILLER, Chief Judge.

On December 4, 1957, the plaintiff filed his complaint in the Circuit Court of Lafayette County, Arkansas, seeking to recover on a policy of life insurance issued to Edd Lee Lovejoy, the insured, by defendant, The Travelers Insurance Company, in the sum of $10,000, together with twelve percent penalty and attorney's fee.

The policy, No. 2819076, was issued January 28, 1957. The beneficiary designated in the policy was "to my estate." The defendant insurance company agreed in the policy to pay the designated beneficiary at the home office of the company in Hartford, Connecticut, the amount of the insurance stated therein immediately on receipt of the company's prescribed forms of due proof of the death of the insured during the continuance of the contract.

The policy provided that the beneficiary might be changed by the insured as follows:

"Subject to written approval of the Company and the right of the assignee, if any, the Beneficiary if not irrevocably designated may be changed at any time and from time to time during the continuance of this contract, such new designation to be effective as of the date of execution thereof, whereupon all rights of the former Beneficiary shall cease. If the Beneficiary or Beneficiaries or any of them named herein shall not survive the Insured, the proceeds of the contract or the share of the deceased Beneficiary or Beneficiaries, as the case may be, shall be paid to the executors, administrators or assigns of the Insured, unless otherwise provided in or by indorsement upon this contract or attached hereto."

Ned A. Stewart, Texarkana, Ark., Robinson & Robinson, Lewisville, Ark., for plaintiff.

In due time the defendant insurance company removed the case to this court and filed its answer and counterclaim. In its answer the defendant insurance company admitted the issuance of the policy and that it was obligated by the terms thereof to pay the sum of $10,000, less $13 for a premium which was due July 28, 1957, and had not been paid; that it was willing to pay the sum of $9,987 but that there were conflicting claims in that the plaintiff, who had been appointed Administrator of the Estate of Edd Lee Lovejoy, the insured, was making claim for said sum and that Georgianna Dedow was likewise making a claim for payment of said amount by virtue of what she claimed to be a valid will of the decedent, Edd Lee Lovejoy, dated June 12, 1957.

In its counterclaim the defendant insurance company asked that Georgianna Dedow be made a party and that it be permitted to pay the said sum of $9,-987.00 into the registry of the court, and that it be discharged.

The plaintiff is a citizen and resident of the State of Arkansas. The defendant insurance company is a citizen and resident of the State of Connecticut and authorized to engage in the life insurance business in Arkansas. Georgianna Dedow was and is now a citizen and resident of the State of Louisiana.

Following the filing of the answer and counterclaim by the defendant insurance company, the court on December 26, 1957, directed that summons be issued and served on the said Georgianna Dedow and restrained the plaintiff and Mrs. Dedow from instituting or prosecuting in any other court any claim to the proceeds of said insurance.

On January 20, 1958, Mrs. Dedow filed a motion for additional time to answer, in which she alleged that:

"This defendant's right to recovery of the funds heretofore interpleaded into the Registry of the Court arises from the last will and testament executed by the said Edd Lee Lovejoy, deceased. Said will as of the date of this motion has not been admitted to probate.

"This defendant is causing said will to be admitted to probate in the 26th Judicial District Court of Bossier Parish of Louisiana, and she desires additional time within which to answer the cross-complaint for interpleader so that she may rightfully allege the admission of such will to probate by way of answer. It will reasonably require thirty days from the date of filing hereof to cause said will to be admitted to probate."

On the same day the motion was filed the court extended for thirty days the time for her to answer the counterclaim for interpleader.

On February 17, 1958, Mrs. Dedow filed her "Answer and Claim to Fund," in which she alleged that the moneys represented by the fund now interpleaded are the proceeds of a life insurance policy issued by defendant insurance company upon the life of Edd Lee Lovejoy, deceased. She attached a photostatic copy of the policy, and further alleged that while the policy designated the beneficiary as "to my estate," the right was reserved unto the insured to change the beneficiary at any time. She further alleged:

"Upon the June 12, 1957, the said Edd L. Lovejoy executed his last will and testament, holographic in form, wherein, by specific reference to the policy of insurance hereinbefore described, he expressed his desire that the beneficiary of said policy of insurance be changed from 'my estate' to 'Georgianna Dedow', this claimant. The said Edd L. Lovejoy died upon July 30, 1957, and his said last will and testament was duly admitted to probate in the 26th Judicial District Court of Bossier Parish, Louisiana, upon the 24th day of January, 1958. A copy of said will is attached hereto marked Exhibit 'B' and made a part hereof as if fully set out herein.

"Pursuant to said last will and testament and the change of bene-

ficiary expressed therein, this claimant, Georgianna Dedow, is entitled to the fund now in the registry of the court and the claim of the plaintiff, Orville M. Odom, Administrator, thereto should in all things be denied."

Upon the filing of the answer by the defendant in interpleader, Mrs. Dedow, the plaintiff on March 6, 1958, filed his motion for additional time to reply to the answer and claim of Mrs. Dedow, and on the same day the court extended the time of plaintiff in which to file a reply to said answer and claim.

On September 13, 1958, the court entered an order sustaining the interpleader and discharging the defendant, The Travelers Insurance Company, from any and all further liability with respect to the insurance policy herein involved.

On October 13, 1958, by agreement of counsel for the plaintiff, the Administrator, and the defendant in interpleader, Mrs. Dedow, the court entered the following order:

"By agreement of counsel, it is ordered by the court that the said interpleader be allowed thirty days from this date within which to take whatever action she may deem necessary in the Probate Court of Lafayette County, Arkansas, and the time heretofore granted to the plaintiff to reply to the answer of the interpleader is further extended until the disposition of litigation in the said Probate Court of Lafayette County, Arkansas."

Mrs. Dedow and her attorneys decided not to file a proceeding for the probate of the will in the Probate Court of Lafayette County, Arkansas, and her attorneys advised the attorneys for the plaintiff that no such action would be taken. Upon receipt of such information the plaintiff on May 13, 1959, filed his reply to the answer and claim of Mrs. Dedow. In his reply the plaintiff admitted that the fund in the registry of the court is the proceeds of the insurance policy issued by defendant insurance company upon the life of Edd Lee Lovejoy; that the designated beneficiary in the policy was "to my estate" and that the policy provided that the beneficiary might be changed subject to the written approval of the company.

Denied that the insured on June 12, 1957, or on any other date executed his last will and testament, holographic in form, and that any change of beneficiary was ever made in said policy.

Admitted that the insured, Edd Lee Lovejoy, died in Lafayette County, Arkansas, on July 30, 1957, and that an instrument purporting to be his last will and testament was admitted to probate without notice in the 26th Judicial District Court of Bossier Parish, Louisiana, on January 24, 1958.

Denied that Mrs. Dedow is entitled to the fund in the registry of the court. The plaintiff further alleged that at the time of the death of the insured, July 30, 1957, he was a citizen and resident of the Town of Bradley in Lafayette County, Arkansas, where he had resided for a period of over two years prior to his death; that he died intestate, and that following his death, upon the petition of the surviving widow and father of the insured, the plaintiff, Orville M. Odom, was appointed Administrator of the estate of the deceased by the Lafayette County Probate Court on August 2, 1957.

In paragraph 5 of the reply the plaintiff states:

"Plaintiff further alleges that when he found out about the admission to probate on the 24th day of January, 1958, in the 26th Judicial District Court of Bossier Parish, Louisiana of the purported instrument, he immediately filed suit in his name as Administrator versus Georgianna Dedow in the 26th Judicial District Court of Bossier Parish, Louisiana, to set aside and annul the order of that court admitting to probate said purported instrument; that said suit was filed on February 7, 1958, and that said case was tried on April 29, 1958, and that on the

26th day of September, 1958, the said order of the 26th Judicial District Court of Bossier Parish, Louisiana admitting said purported instrument to probate on the 26th day of January, 1958, was annulled and set aside, a copy of said judgment being attached hereto, marked Exhibit 'I' and made a part hereof."

On May 21, 1959, the cause was tried to the court, and at the conclusion of all of the testimony, oral argument was waived, and the court took the case under advisement but requested counsel to furnish briefs as early as convenient in support of their respective contentions, which briefs have been duly received and considered.

Many of the facts were admitted, and are summarized as follows:

The insured, Edd Lee Lovejoy, died on July 30, 1957, while a citizen and resident of Lafayette County, Arkansas. On January 28, 1957, the policy of insurance was issued in the sum of $10,000, payable upon the death of the insured "to my estate."

The policy by its terms reserved the right to the insured to change the beneficiary. The insured never requested the written approval of the insurance company to change the beneficiary, and no written approval of the insurance company was ever given.

The insured died, leaving surviving him his wife, Elaine Lovejoy, age twenty-three; Edd Lee Lovejoy, Jr., a son, age twenty-two months; Frank Lovejoy, Sr., age fifty-four, father; Mary E. Lovejoy, age forty-eight, mother; and Frank Lovejoy, Jr., age eighteen, a brother.

On August 2, 1957, upon the petition of the surviving wife and father of the insured, the plaintiff, Orville M. Odom, was duly appointed Administrator of the estate of the deceased, who immediately made demand on the insurance company to pay the policy to him as Administrator, and the proceedings heretofore set forth followed.

At the time of the death of the insured, the defendant in interpleader was a citizen of the State of Louisiana and resided in Bossier City, a distance of approximately forty miles from the Town of Bradley in Lafayette County, Arkansas.

Following the death of the insured and after Mrs. Dedow had obtained possession of the document which she claims is the will of the insured and the insurance policy, she filed a proceeding in the 26th Judicial District Court of Bossier Parish, Louisiana, to probate said document, and on January 24, 1958, that court admitted said document to probate as the holographic last will and testament of the insured. Later and as a result of a proceeding filed by the plaintiff, the same court on September 26, 1958, set aside the judgment in which the said document had been admitted to probate as the will of the insured. The alleged will, dated June 12, 1957, reads as follows:

"12 June, 1957
"To Whom it May Concern:

"As of this date, I wish to express, that it is my desire to dispose of my few worldly possessions in the following manner, in the event something happens to terminate my life.

"To the best of my knowledge, I have only three items of any real value—three tangable items that is, that can be disposed of in the manner of a will. These items are:

"An insurance policy in the amount of ten thousand dollars ($10,000.00) with the Travelers Insurance Company, policy number 2819076; a second insurance policy in the amount of Three Thousand Five Hundred Dollars ($3,500.00) with the General American Insurance Company of St. Louis, Mo. Thirdly, I own one airplane, a Culver Cadet LFA, registration number #          , which at the time of this writing, is being stored at Hatbox Airport, Muskogee, Oklahoma.

"The smaller of these insurance policies is made payable to 'Georgianna E. Lovejoy, wife of the insured.' By this I was refering to

Georgianna Dedow, at other times known as Georgi Cump; Georgianna Cole. The beneficiary was listed in this way, because of my deep desire for her to some day have my name, and because if I had listed her as a good friend, I would have had considerable difficulty in explaining my great indebtedness to her, to the insurance agent.

"The larger policy is, at this time, made out to 'My Estate,' but I am going to change this as soon as possible to 'Georgianna Dedow.'

"It is my desire that the smaller of the two be paid Georgianna in one lump sum, a portion of which is to be used for the disposition of my remains, if any, and the balance to be used as she sees fit.

"Should this amount be refused on the part of Mrs. Dedow, it is desired that the same portion be set aside, and the balance be paid to my younger brother, Franklin L. Lovejoy Jr.

"It is my desire that the larger of the policies be paid to Mrs. Dedow (Georgianna) at the rate of Fifty ($50.00) per week until the entire amount is gone. If again, the amount is refused, the money is to be divided equally between the two children, Patty Ann Cump, and Carl Jeffery Dedow, known as Jeffy. The sums set aside for the children, are to be place in a bank in the form of a trust fund. Neither amount can be touched by anyone, but they are to be allowed to increase at the regular interest rate, until both children are twenty-one years of age. At this time, each child shall dispose of the funds, as they see fit.

"If, after each child reaches the age of twenty-one (21) either of or both of them decide to refuse the money due to outside opinions or desires, the money is to be turned over to the Cancer Society.

"To any others, not mentioned here, who feel they deserve financial reimbursment for my death, allow me to say, that it should be considered my last wish for the above mentioned moneys to be paid as I have stated. And I hope these people will have enough feeling for me to respect my last wishes.

"The airplane is to be given to Georgianna Dedow, to dispose of as she sees fit. If refused, it is to be turned over to my younger brother, Franklin L. Lovejoy Jr., in the same way.

"Any additional personal possessions I acquire after the date of this writing will be handled by a second, or continued will. The three items mentioned herein will not be considered in any additional statement, should be considered, only here.

"/s/ Edd L. Lovejoy

"Witnessed by

"/s/ Anna B. Glasgow"

In addition to the admitted facts above set forth, the following facts were established at the trial:

At the time of the death of the insured, he had in his possession the document dated June 12, 1957, and also the two insurance policies mentioned in said document. Immediately upon learning of the death of the insured, Mrs. Dedow drove to the Town of Bradley in Lafayette County, Arkansas, and went to the room of the insured, and there found and took possession of said document, the two insurance policies and possibly some other articles without the permission or consent of the relatives of the insured.

The document dated June 12, 1957, is in the handwriting of the deceased insured. It purports to be witnessed by Mrs. Anna B. Glasgow, but an examination of the original document discloses that it was written with blue ink and the words "witnessed by Anna B. Glasgow" were written in black ink. Evidently Mrs. Glasgow signed her name after the original document was written by the deceased insured. The testimony does not reveal when, where, or the circumstances that existed at the time she

purportedly signed as a witness. Mrs. Glasgow testified that the deceased insured gave her the writing and his insurance policies with the request that if anything happened to him, for her to give the papers to Georgianna Dedow, but otherwise not to tell her about the papers. She further testified that in the event of the death of the insured, that she was to contact a lawyer, which she did.

The court does not believe that the insured gave the witness the document nor did he give her the insurance policies to keep for Mrs. Dedow, and is convinced that Mrs. Dedow lost no time whatsoever after learning of the death of the insured before taking steps to obtain possession of all the papers of the insured, as above set forth.

The relationship that existed between the insured and Mrs. Dedow, as well as between the insured and Anna B. Glasgow was not definitely established, but all of the circumstances revealed by the testimony indicate that the insured was exceedingly infatuated with Mrs. Dedow, who at that time was married and whose husband was a member of the Air Force and stationed in Greenland.

The defendant, Mrs. Dedow, in her brief states that the sole issue of fact before the court is whether the instrument, a copy of which was attached as Exhibit B to the answer and claim of the defendant, the original having been introduced in evidence, is the writing, act and deed of the deceased insured.

It was established by the testimony of at least three credible disinterested witnesses that the document of June 12, 1957, was in the handwriting and was signed by the insured, Edd Lee Lovejoy. See Ark.Stat.Ann. Sec. 60–404 (Supp. 1957).

The defendant in interpleader further stated: .

"Having resolved the sole question of fact in favor of defendant, the court must first determine as a matter of law whether the instrument in question is the holographic will of the deceased insured, and if the instrument is the holographic will of the insured the court must then resolve whether the insured changed the beneficiary by such instrument."

At the trial Mrs. Dedow offered to introduce into evidence the document of June 12, 1957, "as the holographic will of Edd Lee Lovejoy."

Ark.Stat.Ann., § 62–2126 (Supp.1957) provides:

"No will effectual until probated. —No will shall be effectual for the purpose of proving title to or the right to the possession of any real or personal property disposed of by the will until it has been admitted to probate."

The court sustained the objection of counsel for plaintiff to the introduction of the document as "the holographic will of Edd Lee Lovejoy," but did permit Mrs. Dedow to introduce into evidence the document in support of her contention that the document itself was sufficient to change the beneficiary.

The plaintiff contends that the main issue before the court is whether or not the instrument in writing alleged to have been executed by Edd Lee Lovejoy changed the beneficiary in the policy from the estate to Georgianna Dedow.

In Pedron v. Olds, 1937, 193 Ark. 1026, 105 S.W.2d 70 the court, in a controversy between the wife and daughter of the insured over the proceeds of the insurance policies in which the wife was named as beneficiary, but under which she had no vested interest, held that the insured's will executed after he and the wife had separated, designating the daughter as beneficiary, was effective and entitled her to the proceeds of the policies, since the will conflicted with the provision in the policies and was the last expression on the subject.

In the statement of the case, the court, at page 1028 of 193 Ark., at page 71 of 105 S.W.2d, said:

"It is conceded by both parties that the beneficiary named in the

policies had no vested interest, because, under the provisions of the policies, he had the undoubted right to change the beneficiary in the manner therein provided. Under such circumstances, it is generally held that the beneficiary has no vested interest in the insurance during the lifetime of the insured, and such is our own holding. We do not appear to have heretofore decided the exact question here presented, that is, whether the insured may change the beneficiary, where the power to change is given in the policy without the consent of the beneficiary, by a testamentary provision, or must he pursue the method prescribed in the policy. The cases from other jurisdictions are in hopeless conflict, but it seems to us that the better rule is with the cases that hold that the insured may change his beneficiary by valid will."

On page 1030 of 193 Ark., at page 72 of 105 S.W.2d the court said:

"In the case before us, the beneficiary had no vested interest during the lifetime of the insured and neither did the legatee under the will. Both provisions became effective on his death. The provision in the will conflicted with the provision in the policy designating appellant as beneficiary, and, this being the insured's last expression on the subject, it ought to control."

In the Pedron case, supra, and the great majority of decisions of other courts that have held that the insured may change the beneficiary in a life insurance policy by a valid will, the sufficiency of the document as a will was not questioned for the reason that the document had been duly probated and legally established as a will.

In Eickelkamp v. Carl, 1937, 193 Ark. 1155, 1157, 104 S.W.2d 814, 815, the court said:

"Appellant contends for a reversal of the decree because the method provided in the policy by which a change of the beneficiary in the in-surance policy may be effected was exclusive, and that a substantial compliance with the provisions of the policy was necessary in order to change the beneficiary in the policy to T. M. Carl. In other words, that the beneficiary in the policy could not be changed by the will of the insured because that method was not authorized by the policy. It is insisted that in order to have effectuated a change of beneficiaries the insured must have given written notice to the insurance company at its home office that he desired to change the beneficiary, subject to any previous assignment, and that such change could have become effectual only upon the indorsement of the same on the policy by the company.

"This court decided in the case of Pedron v. Olds, [193 Ark. 1026], 105 S.W.2d 70, that, notwithstanding such a provision in life insurance policies, that insured might effect a change of beneficiaries by will."

■ Thus, under the law of Arkansas, a beneficiary may be changed by the execution of a valid will, and if such a change is made the new beneficiary takes under the policy and not under the will.

Mrs. Dedow first attempted to claim the proceeds of the policy under the writing of June 12, 1957, as a will, as is evidenced by her having the will probated in Louisiana. The order of the Louisiana court was set aside for the reason that, under the law, the will of the insured could only be probated in the county of the testator's residence. Ark. Stat.Ann. Sec. 62–2102 (1957 Supp.).

When it was decided that the alleged will could only be probated in Lafayette County, Arkansas, then Mrs. Dedow was confronted with Ark.Stat.Ann. Sec. 60–507, subd. b (Supp.1957), which reads as follows:

"b. *Pretermitted Children.* If at the time of the execution of a will there be a living child of the testator, or living child or issue of a de-

ceased child of the testator, whom the testator shall omit to mention or provide for, either specifically or as a member of a class, the testator shall be deemed to have died intestate with respect to such child or issue, and such child or issue shall be entitled to recover from the devisees in proportion to the amounts of their respective shares, that portion of the estate which he or they would have inherited had there been no will. (Acts 1949, No. 140, § 39, p. 304.)"

If the alleged will had been probated in the county of the residence of the deceased, the surviving child of the deceased insured would have taken, not under the will but under the law of descent and distribution, subject only to the dower of the surviving wife and mother of the child. See Ark.Stat.Ann. Sec. 61–101 (1947).

Thus the defendant in interpleader does not claim under the alleged will as such, but claims that, notwithstanding the validity of the alleged will has not been established by the Probate Court of Lafayette County, Arkansas, the writing is sufficient to change the beneficiary in the policy.

As heretofore stated, the Supreme Court of Arkansas has held that a beneficiary may be changed by a valid will notwithstanding the policy contained a provision outlining the procedure necessary to be followed in making the change. But the Supreme Court of Arkansas has not held that the beneficiary may be changed other than by a valid will, duly probated, without complying with the applicable provisions of the policy. Therefore, in the determination of the instant case it is necessary to determine whether the document relied upon by the defendant in interpleader is sufficient as a matter of law to change the beneficiary from the estate of the insured to the defendant in interpleader.

Since the paper writing of June 12, 1957, has not been legally established as the will of the deceased insured by the Probate Court of the county of the resi-dence of the deceased, the only question that the court should determine is whether the writing of June 12, 1957, changed the beneficiary in the policy.

The letters of administration that were issued to the plaintiff authorized him to act "as such administrator for and in behalf of the estate and to take possession of the property thereof as authorized by law." He filed this suit in the Circuit Court of Lafayette County in an effort to obtain possession of the proceeds of the insurance policy and was met by the bill of interpleader filed by the insurance company.

This court has no power to disturb the administration of an estate by the state probate courts or to enter into a general administration. However, the federal courts, like those of a state, may entertain actions which have as their purpose the establishment of claims against the estate. But, as indicated in Byers v. McAuley, 1892, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867, it is "the controverted question of debt or no debt" against the estate which may be heard by the federal courts. See Galion Iron Works & Manufacturing Co. v. Russell, D.C.W.D.Ark.1958, 167 F.Supp. 304, 310.

In Markham v. Allen, 1946, 326 U.S. 490, at page 494, 66 S.Ct. 296, at page 298, 90 L.Ed. 256, the court said:

"It is true that a federal court has no jurisdiction to probate a will or administer an estate, * * *. But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against the decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court."

Therefore, the court does not believe that it has the power to determine whether the writing of June 12, 1957,

constitutes the holographic will of the deceased insured, but if it should be held that this court has such power, the court is of the opinion that the paper writing is not sufficient to constitute a will.

In Smith v. Nelson, 1957, 227 Ark. 512, at page 515, 299 S.W.2d 645, 646 the court said:

"Are the letters testamentary? That is, do they show the animus testandi—the intent to make a will —which is necessary to constitute any writing a valid will? It is a fundamental principle that an instrument, to be a valid will, must be executed with testamentary intent. Stark v. Stark, 201 Ark. 133, 143 S.W.2d 875. See also Johnson v. White, 172 Ark. 922, 290 S.W. 932; Page on Wills, § 46; Thompson on Wills (3d Ed.), § 12."

See also Barnard v. First Methodist Church of Mena, 1956, 226 Ark. 144, 288 S.W.2d 595.

In Johnson v. White, 1927, 172 Ark. 922, 290 S.W. 932, the State Circuit Court entered a judgment quashing and setting aside the judgment of the Probate Court of White County, Arkansas, entered January 12, 1925, probating a paper writing as the last will and testament of H. Fred Johnson. The letter which was probated by the Probate Court read as follows:

"Oct. 7, 1918. Camp Pike, Arkansas. My darling little girl. How is my darling little wife tonight? Fine, I hope. I am just fine as I told you. I am going to have my policy changed from Esther to you, for it is my will and wishes is for you to have it. I told Arby to watch the mail box and send it to me, for I wanted you to have it. I must go for this time. Hoping to see my dear little wife soon.

"From your H. Fred Johnson, C.C.H. First Tr. Reg."

The Supreme Court of Arkansas affirmed the judgment of the Circuit Court which quashed the judgment of the Probate Court, and at page 923 of 172 Ark., at page 932 of 290 S.W. said:

"There is nothing in the writing evidencing an intent on the part of the writer to bequeath by, through, or under the instrument his war risk insurance policy to his wife, the appellant herein. The writing must itself evidence a present purpose of declaring a bequest before it can be characterized as a will. If it merely evidences an intention to make such a provision in the future, then such instrument cannot be interpreted as a will. * * *

"The language in the present case does not pretend to declare a present bequest of the writer's war risk insurance policy, but is merely a message to the effect that the writer intends at a future date to change the beneficiary in his policy from appellee, his sister, to appellant, his wife, because it was his will and wish for her to have it. He did not attempt to give it to her in the letter or to use the letter as a means of bequeathing it to her."

Since the question of whether the paper writing constitutes a valid will is not before the court, the court must determine whether or not the paper writing of June 12, 1957, did in fact change the beneficiary from the estate of the insured to Mrs. Dedow.

It is admitted that the insured did not follow the method set forth in the policy to change the beneficiary. He filed no written notice with the insurance company requesting a change nor did he send the policy to the insurance company, although it was at all times in his possession. He did not do anything to effect the change. Of course, if he had done all that was in his power to effect the change, equity would recognize the change as effective notwithstanding the fact that all of the provisions in the policy for change had not been complied with. Here the insured did nothing except to write the document of June 12, 1957. He did not deliver the document

to Mrs. Dedow, and, as the court has found, she obtained possession of the document along with the insurance policies by searching his room in Bradley, Arkansas, during the evening of the day of his death. The first paragraph of the writing states:

"As of this date I wish to express, that it is my desire to dispose of my few worldly possession in the following manner, in the event something happens to terminate my life."

He then enumerates three items:

(1) The insurance policy involved herein;

(2) An insurance policy in the sum of $3,500, issued by the General American Insurance Company of St. Louis; and

(3) An airplane which at that time was stored at Hatbox Airport, Muskogee, Oklahoma.

The paper then recites:

"The smaller of these insurance policies is made payable to 'Georgianna Lovejoy, wife of the insured.' By this, I was referring to Georgianna Dedow, at other times known as Georgi Cump; Georgianna Cole. The beneficiary was listed in this way because of my deep desire for her to some day have my name, and because if I had listed her as a good friend, I would have had considerable difficulty in explaining my great indebtedness to her to the insurance agent."

There is nothing in the record to explain the insured's "great indebtedness" to Mrs. Dedow.

Following his expression of a desire that Mrs. Dedow might sometime have his name, the document states:

"The larger policy is at this time made out to 'my estate', but I am going to change this as soon as possible to 'Georgianna Dedow'."

He then makes suggestions as to how the money should be paid to Mrs. Dedow and defines the interest that her children might acquire in the money. He even goes to the extent of stating, "if, after each child reaches the age of twenty-one, either or both of them decide to refuse the money due to outside opinions or desires, the money is to be turned over to the Cancer Society."

At this point his conscience evidently arose to confront him and reminded him of his obligations to his wife and infant son, because in the last paragraph he stated, "to any others, not mentioned here, who feel they deserve financial reimbursement for my death, allow me to say, that it should be considered my last will for the above mentioned moneys to be paid as I have stated. And I hope these people will have enough feeling for me to respect my last wishes."

It is apparent from a reading of the entire document that he did not effect a change in the beneficiary. Had he expected the writing to effect a change, he would either have delivered the writing to Mrs. Dedow along with the policies at that time, or would have taken action to effect the change as provided in the policy. It cannot be said that he did not know what was necessary to be done to effect a change, because he was resourceful enough to have a policy issued by another company to Georgianna Lovejoy, wife of the insured. The insured was killed while dusting cotton from an airplane in Lafayette County on July 30, 1957, approximately seven weeks from the time it is claimed he wrote the document. During all of this time he took no steps to change the beneficiary. Evidently the time had not arrived when he was fully convinced that he desired to change because he had ample time to do so, and as stated by the Supreme Court of Arkansas in Johnson v. White, supra [172 Ark. 922, 290 S.W. 933], the most that can be said about the document is that the insured at that time intended "at a future date to change the beneficiary in his policy."

See Nance v. Hilliard, 8 Cir., 1939, 101 F.2d 957; Hunter v. Federal Life Ins. Co., 8 Cir., 1940, 111 F.2d 551; Smith v. Smith, 8 Cir., 1949, 172 F.2d 399.

The plaintiff is entitled to receive the funds now in the registry of the court, and a judgment is being entered today dismissing the claim of the defendant in interpleader, Georgianna Dedow, and directing that the funds now in the registry of the court deposited there by The Travelers Insurance Company as the proceeds of the policy of insurance herein involved be paid to plaintiff, Orville M. Odom, Administrator of the Estate of Edd Lee Lovejoy, deceased.